UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DAVID PEREIRA; and ORION 50 OUTDOOR, LLC, a California limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>BEN FU; CITY OF ROCKLIN; and CLEAR CHANNEL OUTDOOR, INC., a Delaware corporation,<br><br>    Defendants. | No. 2:15–cv–00503–KJM–AC<br><br>ORDER |

This matter is before the court on defendants' motion to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Plaintiffs oppose the motion. (ECF No. 13.) Defendants have replied. (ECF No. 15.) The court held a hearing on the matter on July 17, 2015, at which John Pereira appeared for himself and for Orion 50 Outdoor, LLC (Orion) and Stephen Horan appeared for defendants. The Rocklin City Attorney Russell Hildebrand was also present. As explained below, the court GRANTS in part and DENIES in part defendants' motion.

/////

/////

I.     FACTUAL ALLEGATIONS[1]

This case is a piece of what the Ninth Circuit has characterized as "the world of billboard litigation." *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 738 (9th Cir. 2011). Plaintiff John David Pereira, a resident of El Dorado County, California, is a member of plaintiff Orion and is its attorney. (Compl. ¶ 4, ECF No. 1.) Orion's "business is to rent out signs . . ." (*id.* ¶ 9), and it "has leased two locations" in the City of Rocklin (City) "for the maintenance and operation of off-premise outdoor advertising for both commercial and non-commercial purposes" (*id.* ¶ 8). At all relevant times, defendant Ben Fu was the City's Planning Manager. (*Id.* ¶ 5.) The City is a California municipality. (*Id.*) Defendant Clear Channel Outdoor, Inc., (Clear Channel) engages in the business of outdoor advertising. (*Id.* ¶ 6.)

In February 2008, by resolution, the City directed its staff to prepare "an amendment to the Rocklin Zoning Ordinance to establish a Freeway LED[2] sign program . . . ." (Defs.' Request Judicial Notice, Attach. 1, ECF No. 9-2.)[3] The amendment's stated purpose was "to eliminate the visual blight resulting from an excess of large, aesthetically displeasing and outdated freeway billboard sign structures." (*Id.*) Four years later, in February 2012, the City staff recommended approving a series of actions allowing the construction of three billboards: two located along State Route 65 and one located along Interstate 80. (Compl., Ex. 2, ECF No. 1-2.) On March 13, 2012, the City Council passed Ordinance 979, amending Chapter 17.75 of

---

[1] Because this matter is before the court on a motion to dismiss, the court accepts as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[2] LED stands for light-emitting diode. *Scenic Am., Inc. v. United States Dep't of Transp.*, 49 F. Supp. 3d 53, 56 (D.D.C. 2014). "Digital billboards use light-emitting diodes that switch on and off in order to depict action, motion, light, or color changes." *Scenic Am., Inc. v. United States Dep't of Transp.*, 983 F. Supp. 2d 170, 173 (D.D.C. 2013).

[3] Attachment 1 is entitled "Resolution of the City Council of the City of Rocklin of intent to initiate an amendment to the zoning ordinance pertaining to an LED freeway sign program (ZOA-2008-01)." (ECF No. 9-2.) Defendants ask the court to take judicial notice of it, and plaintiffs do not object. (*See* ECF No. 13 at 1 (relying on Attachment 1 in their opposition brief).) The court takes judicial notice of Attachment 1. *See Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011) (taking judicial notice of a city's resolution).

Title 17 of the City Municipal Code relating to sign regulations.  The Ordinance added section 17.75.068[4] for the Digital Freeway Sign Program (DFSP).  (Attach. 6, ECF No. 9-2.)[5]

In February 2015, plaintiff Pereira, "on behalf of himself and other [P]laintiffs herein," submitted applications to the City to erect two "Off-Premise Advertising Digital Displays" along the "Highway 65 and Highway 80 Corridors . . . ."  (Compl. ¶ 10.)  The City planner accepted the applications along with the fees.  (*Id.*)  At the time of Pereira's submissions, the City planner requested a Preliminary Title Report for each site, which plaintiffs supplied.  (*Id.* ¶ 11.)  The proposed sign on the Highway 65 corridor was presented for approval conditioned on the removal of a City sign; plaintiffs allege "it is custom and practice . . . in all municipalities . . . to accept and process applications for land use entitlements subject to conditions either proposed by applicant or required by the municipality."  (*Id.* ¶ 12.)  In addition, plaintiffs allege they were unlawfully required to submit "information and documentation not called for in [the] ordinance[] and to pay fees in excess of the fees set forth in [the City's Code]."  (*Id.* ¶ 14.)  Plaintiffs claim the City "has fallen into cahoots with a billboard company, Clear Channel . . . ."  (*Id.* ¶ 16.)  Plaintiffs explain Clear Channel holds permits to two locations for which Clear Channel gives money to the City; one location "is located on property adjacent to the property on which

---

[4] This section was subsequently changed to section 17.75.090.  (Compl., Ex. 1, ECF No. 1-1.)  The latter provision provides, in relevant part, as follows:

> A. Digital freeway sign means an off-site sign utilizing digital message technology, capable of changing the static message or copy on the sign electronically.  A digital freeway sign may be internally or externally illuminated.
>
> . . . .
>
> D. No single applicant shall be permitted to seek approval for more than three digital freeway signs.  Provided at least three or more existing freeway billboard structures have been removed, up to three digital freeway signs shall be allowed in the city separated as follows: one on the Interstate 80 corridor, one on the State Route 65 By-Pass route, and one on the balance of the State Route 65 corridor.

[5] The court grants defendants' unopposed request for judicial notice of City Ordinance number 979.  *See Colony Cove Properties, LLC*, 640 F.3d at 955 n.4.

3

[p]laintiff applied for a digital sign." (*Id.* ¶ 21.) Plaintiffs allege that "Clear Channel is a willing participant because of a corresponding financial gain." (*Id.*) The complaint also alleges the City has refused to process plaintiff Pereira's applications, the City has ignored plaintiff Pereira's request to remove the City's sign to accommodate plaintiff's sign, and that plaintiff Pereira cannot obtain an impartial decision from the City on the applications. (*Id.* ¶ 33.)

Plaintiffs commenced this action on March 5, 2015, pleading the following seven claims: (1) declaratory relief against the City and Clear Channel; (2) injunctive relief against the City and Clear Channel; (3) violation of civil rights against Fu and the City; (4) violation of substantive and procedural due process against Fu and the City; (5) damages and abatement of nuisance under California Civil Code section 3501 against the City and Clear Channel; (6) damages and abatement of public nuisance under California Civil Code section 3480 against the City and Clear Channel; and (7) unfair business practices against Clear Channel. (ECF No. 1.) On May 8, 2015, defendants filed the pending motion to dismiss plaintiffs' complaint. (ECF No. 9.)

II.     POST-HEARING FILINGS

After the court heard defendants' motion to dismiss (ECF No. 16), defendants filed a second request for judicial notice, asking that the court judicially notice the petition for a writ of mandamus filed by plaintiff Pereira on July 22, 2015, in the Placer County Superior Court in the case of *Pereira v. City of Rocklin, et al.*, No. SCV-0036594. (ECF No. 17.) Concurrent with this request for judicial notice, defendants submitted a motion to reopen the record on their motion to dismiss "for the limited purpose of submitting a [s]econd [s]upplemental [r]equest for [j]udicial [n]otice." (ECF No. 18 at 1.) Contrary to defendants' representation, the writ petition was not attached to defendants' request for judicial notice. Therefore, the court allowed the defendants to file the petition and directed the parties to file simultaneous briefs on the effect of the petition on the instant case, including whether this case should be stayed. (ECF No. 21.) Plaintiff Pereira's petition for a writ of mandamus now before the court originally alleged two causes of action. (ECF No. 22 at 1, Ex. A.) Plaintiff dismissed his second cause of action (ECF No. 27-1, Attach. 1); hence, the petition before the state court now seeks only one form of relief: a writ of

4

1 mandamus directing the City to process his applications in good faith.  (ECF No. 22 at 10.)  At
2 the time of this court's hearing, the petition for a writ of mandamus was set for hearing in state
3 court in September 2015.

4        In his supplemental brief, plaintiff Pereira claims he filed the writ petition to
5 preserve his rights under California law.  (ECF No. 23 at 2.)  Pereira asserts while the petition and
6 the complaint in this case seek different forms of relief, plaintiff is "willing to have this court
7 decide both issues."  (*Id.* at 3.)  He agrees this court should not stay the instant action.  (*Id.*)
8 Concurrent with his supplemental brief, plaintiff Pereira also has filed a request for judicial notice
9 asking that the court take judicial notice of defendants' opposition brief in the mandamus case.
10 (ECF No. 24-1.)  Defendants have not objected, and the court grants plaintiff's request.  *See*
11 *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial
12 notice of court filings).

13        In their supplemental brief, defendants clarify they "do not seek a stay of the
14 federal action."  ((ECF No. 25 at 2.)  "Defendants submit that it is appropriate for the [d]istrict
15 [c]ourt to rule on their motion to dismiss in relation to [p]laintiff's federal claims based on first
16 amendment (facial and 'as applied') and due process and for th[is] . . . [c]ourt to decline
17 supplemental jurisdiction of state law claims."  (*Id.*)

18        Most recently, on September 3, 2015, plaintiffs moved to reopen the record on
19 defendants' motion to dismiss to submit another request for judicial notice.  (ECF No. 26.)  In it,
20 plaintiffs ask the court to take judicial notice of two documents: (1) a request to dismiss the
21 second claim in plaintiff Pereira's petition for a writ of mandamus, and (2) City Resolution 2015-
22 231, an operating agreement between the City and Mercedes Benz of Rocklin dated September 1,
23 2015.  (ECF No. 27.)  Defendants did not object, and the court grants the request.  *See Colony*
24 *Cove Properties, LLC*, 640 F.3d at 955 n.4.

25        Here, having considered the question and in light of the parties' positions, the
26 court declines to enter a stay.

27 /////
28 /////

III. <u>MOTION TO DISMISS</u>

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

/////

B. Analysis

1. First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. It applies to state and local governments, including the City here, through the Fourteenth Amendment's Due Process Clause. *See Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707 (1931). Yet, the First Amendment's protection is not absolute; "at times First Amendment values must yield to other societal interests." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981); *see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) ("It has been clear since [the Supreme] Court's earliest decisions concerning the freedom of speech that the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest.").

a. Facial Challenge

i. Standing

Under City Municipal Code section 17.75.020 of Chapter 17.75 (Signs on Private Property), "A sign permit is required prior to the installation or display of any sign . . . ." The section of the Code plaintiffs challenge, section C, provides:

> Digital freeway signs shall only be permitted when the city has entered into an operating agreement with a digital freeway sign owner to allow for digital billboards under certain circumstances; including (i) compensation to the city; (ii) the permanent removal of at least three off-site, pre-existing freeway billboards from within the city; (iii) the provision of access to the city to a portion of the total available display time to allow the city to present messages of community interest and information, and public safety; (iv) the provision of access to the appropriate agencies for the purpose of displaying "Amber Alert" messages and emergency-disaster communications; and (v) to establish quality and maintenance standards.

17.75.090(C).[7]

As an initial matter, this court must determine whether plaintiffs have standing to challenge Chapter 17.75.090(C) under the First Amendment. An established principle of

---

[7] All the references to a 17-series number are to the City Municipal Code.

7

constitutional adjudication is "that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) (collecting cases). A closely connected principle is that constitutional rights are personal and cannot be asserted vicariously. *Id.*

An exception to these principles, however, exists for facial challenges brought under the First Amendment. Specifically, in the First Amendment context, the Supreme Court has allowed "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick*, 431 U.S. at 612 (internal quotation marks omitted). In other words, litigants may challenge a statute not because their own free expression rights are violated, but because of a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

"Facial overbreadth claims have also been entertained where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct, and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights." *Id.* at 612–13 (internal citations omitted). In addition, the Supreme Court has explained that,

> [t]he consequence of [the] departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.
>
> Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.

*Id.* at 613.

8

In addition to the concerns discussed above, as a general matter, to have standing in federal court, a plaintiff must have been threatened with or have suffered an actual injury-in-fact. An actual injury is neither abstract nor hypothetical. Rather, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 (9th Cir. 1999). Even plaintiffs claiming standing under the overbreadth doctrine must "have suffered some cognizable injury, [though their] conduct is not protected under the First Amendment," *Id.* at 1112 (quoting *Bordell v. General Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991)). That is, for the exception to apply, not only must the overbreadth be substantial, but the plaintiff must still satisfy the injury-in-fact requirement. The Ninth Circuit has allowed substantial overbreadth claims "when the legislation allegedly vests government officials with unbridled discretion and when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech." *Id.* at 1111.

Here, while plaintiff Pereira's allegations satisfy the injury-in-fact requirement because defendants refused to process his applications, his allegations do not meet the substantial overbreadth requirement. It is undisputed that Pereira submitted applications for two digital signs. It is also undisputed that the City denied those applications because "[t]he three sites identified . . . already have approved entitlements and two of the three have been constructed." (ECF No. 14, Attach. 1.) Contrary to Pereira's allegations, the City denied Pereira's application based on Chapter 17.75.090(D), not the section (C) provisions. Section (D) provides:

> No single applicant shall be permitted to seek approval for more than three digital freeway signs. Provided at least three or more existing freeway billboard structures have been removed, up to three digital freeway signs shall be allowed in the city separated as follows: one on the Interstate 80 corridor, one on the State Route 65 By-Pass route, and one on the balance of the State Route 65 corridor.

17.75.090(D). Given these provisions, the City's decision was not an exercise of unbridled discretion. Plaintiff Pereira lacks standing to bring this claim as pled. The court grants Pereira leave to amend if he can do so consonant with Rule 11.

As to plaintiff Orion, the complaint does not adequately establish standing either. The complaint states that Pereira submitted applications to the City "on behalf of himself and other Plaintiffs herein," but the record shows only that Pereira applied for a permit, and therefore that only Pereira could have been denied a permit. Orion does not meet the injury-in-fact requirement and hence lacks standing to challenge the City Ordinance. While Orion conceded this flaw at hearing, it represented that, as a practical matter, if a license were granted to Pereira, it would be assigned to Orion. Orion is granted leave to amend to satisfy standing, if it can do so consonant with Rule 11. *See Show Media California, LLC v. City of Los Angeles*, 479 F. App'x 48, 49 (9th Cir. 2012) (unpublished).

### ii. As-Applied Challenge

In addition to a facial challenge, a party may challenge a statute as-applied, as plaintiffs do here. This type of challenge contends that the law is unconstitutional as applied to the plaintiffs' particular expressive activity, even though the law may be capable of valid application to others. *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Thus, a successful "as-applied" challenge does not invalidate the law itself, but only the particular application of that law. *Id.* "As-applied challenges are the most common type of challenges to restrictions on speech activity and may be coupled with facial challenges." *Id.*

Plaintiffs argue the City Ordinance is unconstitutional as applied to them because the City "arbitrarily and unreasonably" refused to accept their applications. (ECF No. 13 at 16.) But as noted above, the City denied plaintiff's application because the City had already approved three permits before plaintiffs applied. And under Chapter 17.75.090(D), the City cannot approve more than three permits. The allegations of the complaint do not show the City acted "arbitrarily," as plaintiffs argue in their opposition brief. Accordingly, the court grants defendants' motion to the extent plaintiffs bring an as-applied challenge to the City's denial of their applications. The court grants leave to amend if plaintiffs can amend consonant with Rule 11.

/////

/////

/////

2. Due Process

Regarding the due process claim, plaintiffs claim the "City misses the point." "Plaintiff is not attacking the entire Ordinance as unconstitutional." (ECF No. 13 at 16.) Rather, "Plaintiff alleges [the] City has acted arbitrarily and capriciously by obstructing Plaintiff's ability to submit and have processed his applications to conduct an expressive activity by refusing to accept and process (to a positive or negative conclusion) Plaintiff's applications." (*Id.*)

a. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (emphasis in original). "[T]he Due Process Clause, like its forebear in the Magna Carta . . . was intended to secure the individual from the arbitrary exercise of the powers of government." *Id.* (internal citation, quotation marks omitted). "By requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property, the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, it serves to prevent governmental power from being used for purposes of oppression." *Id.* (internal quotation marks omitted).

A claim for violation of procedural due process has two components. First, a plaintiff must show that a protected property interest was taken. Second, it must show that the procedural safeguards surrounding the deprivation were inadequate. *See Walnut Hill Estate Enterprises, LLC v. City of Oroville*, 452 F. App'x 756, 758 (9th Cir. 2011) (unpublished). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient

1   institution of property to protect those claims upon which people rely in their daily lives, reliance
2   that must not be arbitrarily undermined.  It is a purpose of the constitutional right to a hearing to
3   provide an opportunity for a person to vindicate those claims." *Id.* at 577.  "Property interests, of
4   course, are not created by the Constitution.  Rather they are created and their dimensions are
5   defined by existing rules or understandings that stem from an independent source such as state
6   law—rules or understandings that secure certain benefits and that support claims of entitlement to
7   those benefits." *Id.*

8   Here, Pereira alleges a due process violation because defendants refused to process
9   his application and thereby denied him the process he says he was guaranteed by the City's own
10  Code.[9]  (Opp'n at 17.)  As noted above, the Ordinance sets forth the procedure and requirements
11  for obtaining a permit.  The provisions of the Ordinance support no claim of entitlement; nor do
12  they create any property interests.  In this case, plaintiff Pereira surely had a desire to obtain a
13  permit, but as an applicant he did not have a property interest to vindicate.  The allegations of the
14  complaint do not show that a protected property interest was taken from him, much less without
15  adequate procedures.  Defendants' motion is granted, though plaintiffs are given leave to amend
16  if they can, consonant with Rule 11.

17  Pereira also claims a procedural violation related to the City's appeal process.  The
18  complaint alleges there is not a "plain, speedy, and effective avenue for judicial review" and that
19  "the adjudicative body is the same as the wrongdoer."  (Compl. ¶ 67.)  This claim lacks a factual
20  basis.  There is no dispute as to which party conducted the initial review and issued the letter of
21  denial; the parties agree, and the record shows, that the Planning Manager, Ben Fu, did so.
22  Ordinance section 17.75.100, which outlines the permit and appeal process, provides: "The
23  director's [aka the Planning Manager's] decision may be appealed to the design review board, and
24  the commission's decision may be appealed to the [City] council . . . ."  Under sections 2.40.020
25  and 17.72.030, the planning commission and decision review board are one and the same; the

---

[9] Confusingly, plaintiff Pereira "agrees there is no 'vested right' before a permit is issued," but nonetheless argues that the City was obligated to process his application.  Opp'n at 17.

12

1  body is composed of five members who must be city residents. The City Council is a separate
2  body from the planning commission, composed of different members. In other words, Ben Fu as
3  Planning Manager does not adjudicate appeals and as part of the appeal process, applicants may
4  appeal to two separate adjudicative bodies. It thus cannot be said that the adjudicative body is the
5  same as the alleged wrongdoer. Further, to the extent that Pereira objects to the speediness of the
6  appeal process, the filing deadlines outlined in the Ordinance suggest that appeals must be made
7  within 10 days of the party's receipt of the Planning Manager's decision to ensure prompt review
8  by the planning commission or City Council. (*See* 17.86–.88.) Though the Ordinance allows that
9  an appeal hearing "may be continued from time to time," (17.86.040 & 17.46.050), there is
10 nothing to suggest that the process is so slow-moving as to rise to the level of a due process
11 violation.

12 The court GRANTS defendants' motion to dismiss plaintiff's procedural due
13 process claim. Plaintiff is given leave to amend if he can do so consonant with Rule 11.

14                      b.   Substantive Due Process

15 While a substantive due process claim may arise out of the same facts as a
16 procedural due process claim, the claims are different in several important respects. A procedural
17 due process claim challenges the procedures used in effecting a deprivation, whereas a
18 substantive due process claim challenges the governmental action itself. *See Brittain v. Hansen*,
19 451 F.3d 982, 991 (9th Cir. 2006). To establish a violation of substantive due process, a plaintiff
20 must prove that the government's action was clearly arbitrary and unreasonable. *Cnty. of*
21 *Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("The touchstone of due process is protection of
22 the individual against arbitrary action of government."). "[O]nly egregious official conduct can
23 be said to be 'arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking
24 'any reasonable justification in the service of a legitimate government objective.'" *Shanks v.*
25 *Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). Egregious conduct is "conduct intended to injure
26 in some way [that is] unjustifiable by any government interest." *Lewis*, 523 U.S. at 849.

27 Here, Pereira's claimed interest is created and defined by the City's Ordinance. As
28 noted above, the City denied plaintiff Pereira's applications because of the limitation on the

number of signs. By its terms, the Ordinance requires only that the Planning Manager "review" completed applications and issue a determination. The letter issued to Pereira shows that the Planning Manager evaluated his proposal and made a determination in accordance with the Ordinance. (ECF No. 14, Attach. 1.)

In addition, "there is no question that restrictions on billboards advance cities' substantial interests in aesthetics and safety." *World Wide Rush*, 606 F.3d at 685; *see Vincent*, 466 U.S. at 804 (finding a legitimate government interest in reducing visual clutter and improving the quality of urban life). In *Vincent*, the Supreme Court held that the City of Los Angeles' ordinance, which banned all signs on public property, furthered the City's legitimate interests. *Vincent*, 466 U.S. at 804. The Court found especially compelling the fact that "the text of the ordinance [was] neutral—indeed it [was] silent—concerning any speaker's point of view." *Id.* Here, the stated purpose and intent of the Ordinance furthers the City's legitimate interest in aesthetics and safety. *See* 17.75.010.[10] As in *Vincent*, the text of the Ordinance is content-neutral. It contains a basic policy provision that reads, "It is the city's policy to regulate signs in a constitutional manner that is content neutral . . . ." (17.75.030.) Further, the denial letter Pereira received states the grounds for the Planning Manager's decision not to process his application. Those grounds had nothing to do with the putative content of Pereira's message. The City

---

[10] That Section, setting forth the Purpose and Intent, reads as follows:

> A. The purpose of this chapter is to encourage signs which are integrated with, and harmonious to, the buildings and sites which they occupy, to eliminate excessive and confusing sign displays, to preserve and improve the appearance of the city as a place in which to live and to work and as an attraction to nonresidents who come to visit or trade, and to restrict signs which increase the probability of accidents by distracting attention or obstructing vision.
>
> B. In adopting this chapter, the city council finds that excessive and inappropriate signage has an adverse impact on the overall visual appearance of a city, and can increase risks to traffic and pedestrians. Proper sign control will safeguard and preserve the health, property and public welfare of Rocklin residents through prohibiting, regulating and controlling the design, location and maintenance of signs.

1  therefore did not engage in conduct intended to injure Pereira; its actions were wholly in service
2  of an established legitimate interest.
3        The complaint's allegations are insufficient to state a claim under substantive due
4  process. The court GRANTS defendants' motion to dismiss plaintiff Pereira's substantive due
5  process claim. The court grants plaintiff leave to amend if he can do so consonant with Rule 11.
6  *See Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 958 (9th Cir. 1991) ("within the realm
7  of possibility that plaintiff could establish that the City's actions in processing the applications
8  were wrongful or arbitrary" and noting error in dismissing without leave to amend).
9      3. Equal Protection
10        Plaintiff also alleges he was denied equal protection of the laws. Apparently,
11  plaintiff's equal protection claim is based on the same argument as his substantive due process
12  claim. (*See* ECF No. 17–18.) In one short paragraph, plaintiff argues "the City . . . applied the
13  law in an arbitrary or invidiously discriminatory manner." (*Id.* at 17.)
14        To establish an equal protection claim, a plaintiff must show that the City or its
15  officials applied the law in an arbitrary or invidiously discriminatory manner. *Lockary v. Kayfetz*,
16  917 F.2d 1150, 1155 (9th Cir. 1990). Equal protection challenges to state action that does not
17  "trammel[] fundamental personal rights or implicate[] a suspect classification" receive only
18  rational basis scrutiny. *Id.* That test "will not sustain conduct by state officials that is malicious,
19  irrational or plainly arbitrary." *Id.* Plaintiff's equal protection claim is identical to the substantive
20  due process claim, and the court GRANTS defendants' motion for the same reason. Plaintiff
21  Pereira is given leave to amend if he can do so consonant with Rule 11.
22      4. Claims Against Defendant Fu
23        Defendants argue the complaint does not allege facts showing individual defendant
24  Fu's conduct amounts to a constitutional violation. (ECF No. 9.) Plaintiffs do not address that
25  argument.
26        "Suits against state officials in their official capacity . . . should be treated as suits
27  against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in
28  an official-capacity suit is the governmental entity and not the named official, the entity's policy

or custom must have played a part in the violation of federal law." *Id.* (internal quotation marks omitted). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, [o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (internal quotation marks omitted, alteration and emphasis in original). "While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*

Here, it appears plaintiffs sue defendant Fu both in his official and individual capacities. Plaintiffs' claims against defendant Fu in his official capacity may be duplicative of the claims against the City. That is because "it is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity. . . . If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant." *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997). Accordingly, the court GRANTS with prejudice defendants' motion to dismiss defendant Fu to the extent plaintiffs bring a claim against him in his official capacity.

On the other hand, a government official can be sued in his personal capacity and can be alleged as a proper defendant. *Hafer v. Melo*, 502 U.S. at 27. Defendants' motion is DENIED to that extent.

5. Takings: The *Koonts* and *Nollan* Cases

In their complaint and opposing brief, plaintiffs intermittently cite *Koontz v. St. Johns River Water Management District*, __ U.S. __, 133 S. Ct. 2586 (2013), and *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987). Those cases are Takings Clause cases. At hearing, plaintiffs conceded they cannot allege sufficient facts to state a claim under the Takings Clause. Accordingly, the court GRANTS with prejudice defendants' motion as to plaintiffs' Takings Clause claim.

/////

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' amended complaint is due within twenty-one days of the date of this order. Any amended complaint shall avoid the scattershot nature of the original complaint, identify each claim as facial or as applied, plead clearly the facts applicable under each separate claim consonant with Rules 8 and 11, and identify whether defendant Fu is sued in his official or personal capacity.

IT IS SO ORDERED.

DATED: September 14, 2015.

_____
UNITED STATES DISTRICT JUDGE